POINSETTIA DAIRY PRODUCTS, INC., v. THE WESSEL CO.

166 So. 306.
Opinion Filed February 29, 1936.
Rehearing Denied March 16, 1936.

*Mabry, Reaves, Carlton & White,* for Plaintiff in Error; *Gibbons & Gibbons, and Altman & Cooper,* for Defendant in Error.

PER CURIAM.—The Poinsettia Dairy Products, Inc., entered into a contract with the Wessel Company whereby the latter was, over a period of thirty-two weeks, to advertise the dairy products of the former. The contract was to have been executed simultaneously with their similar contracts with other corporations in the dairy business throughout the nation. The Wessel Company agreed on its part to furnish, beginning October 17, 1932, two broadcasts per week, for thirty-two consecutive weeks over Station W. D. A. E., each broadcast to be approximately fifteen minutes in length, advertising the dairy products of the Poinsettia Dairy Products, Inc.; twenty-three hundred each of thirty-two different bottle collars; thirty sets of wagon signs, each set to consist of eight signs each; thirty-six frames and

sets of eight posters to fit such frames for use as display material; a sufficient quantity of buttons, membership cards, wands and booklets of magic to cover all requests for the same; twenty numbers of the magazine "How" to be delivered every second week during the term of the agreement; materials for three different sales contests among the employees; thirty-two newspaper matrices of sixty-four lines each to be used in newspapers for advertising coming radio programs; additional bottle collars to be furnished at $2.50 per thousand, and additional frames each with eight posters to fit the same, to be furnished at $2.00 per set. For this, Poinsettia Dairy Products, Inc., agreed to pay $1900, to be paid in monthly installments of $190.00 each, beginning November 10, 1932. The contract also provided that it could not be cancelled for any reason whatever; that upon the default of the Poinsettia Dairy Products, Inc., to pay the installments when due, or upon its default in any of the terms of the agreement, the Wessel Company should have the option to declare all the remaining payments immediately due and payable, without notice, as liquidated damages; and that the contract should be construed according to the laws of the State of Illinois.

After the twenty-fourth broadcast, the results not being what the Poinsettia Dairy Products, Inc., had anticipated, it ordered the program stopped and notified the Wessel Company that it did not want any more advertising and that it was cancelling the contract.

The Wessel Company brought suit against the Poinsettia Dairy Products, Inc., the first count of the declaration being worded in this language:

"Whereas, on the 30th day of Setpember, A. D. 1932, the plaintiff and the defendant entered into an agreement whereby the plaintiff was to perform certain services and

to furnish certain materials for the maintenance of an advertising campaign and for the promotion of sales, all of which is more particularly shown by a copy of said agreement, which is hereto attached and marked 'Plaintiff's Exhibit A' and made a part of this declaration as fully as if copied herein *in haec verba.* The defendant was to pay to the plaintiff the sum of One Hundred and Ninety Dollars per month until the full amount under the contract, in the sum of Nineteen Hundred Dollars was paid, which amount was the consideration for the plaintiff's promise. The plaintiff did perform under, and is still willing to and has never refused to perform, its part of the contract. The defendant refused on or about the 5th day of January, A. D. 1933, to continue with the contract. The plaintiff had already prepared and done all of the work necessary to be done to put in a position to fulfill said contract. Defendant refused and still refuses to pay any of the sums due under said contract, the whole of which is now past due and unpaid. The contract provides that upon any default on the part of the defendant, the plaintiff has the option to declare the whole amount unpaid as due, and the plaintiff so declares the same now due and payable and brings this suit and claims damages in the sum of Three Thousand Dollars."

In addition the declaration also contained six money counts.

Four sets of pleas were filed to the declaration, each set successively being held faulty on demurrer or on motion to strike. Only the rulings of the trial judge on plea number five of the second amended set of pleas, and plea number four of the third amended set of pleas and a proposed fourth amended plea are argued, so only they will be considered.

The fifth plea of the second amended set of pleas was:

"That the consideration for which the defendant executed the contract here sued upon has partially failed, in that the plaintiff did not and has not completely fulfilled the terms and conditions of its contract, which terms and conditions are made a part of this plea as fully as if copied at length herein, but that plaintiff furnished the defendant with only the following articles, to-wit: 24 radio broadcasts and materials for that period of time, 2300 each of twelve different bottle collars, or a total of 27,600, 90 wagon signs, 36 frames, 108 posters, 500 membership cards, 500 membership buttons, 500 magic wands, 40 magazines entitled 'How,' and 32 newspaper matrices, of which 500 membership buttons, 250 magic wands and 30 newspaper matrices have been returned unused to plaintiff by defendant."

The court held this plea bad on demurrer.

The fourth plea of the third amended set of pleas was:

"That it denied that plaintiff has already prepared and done all of the work necessary to be done to put plaintiff in a position to fulfill the contract."

This plea was held on demurrer.

Then on February 7, 1935, defendant sought to obtain leave of court to file its additional plea to the first count of the declaration, which plea set out in detail the various happenings between the parties since entering into the contract. The court denied the motion.

The court entered final judgment upon demurrer in favor of plaintiff against the defendant; and assessed the damages at $1516.00 plus $253.68 as interest.

Defendant filed motion for new trial substantially on the grounds that (1) there was no evidence before the court at the time of the entry of judgment establishing that plaintiff had sustained any damages by reason of the breach of

the contract sued on: (2) that there was no evidence before the court in proof of the allegations of the declaration and no default entered against defendant confessing the same; (3) that even though all pleas were stricken, yet it was plaintiff's duty, if it desired a judgment, to produce evidence before the court in proof of its damage; (4) the first count of the declaration upon which said judgment was entered is wholly insufficient to sustain the judgment entered or the entry of any judgment against defendant.

. Defendant made a motion in arrest of judgment substantially on the grounds that (1) the first count of the declaration upon which judgment was entered is wholly insufficient to support said judgment or any judgment against defendant; (2) there is no evidence before the court as to the damages sustained; (3) there was no evidence produced before the court in proof of the allegations of the declaration.

Both the motion for new trial and the motion for arrest of judgment were denied by the court on February 11, 1935.

From the final judgment, defendant took writ of error.

. The first count of the declaration in this case was framed on the theory that the provision in the contract calling for "liquidated damages" upon any default of the defendant, was in law a binding stipulation for liquidated damages to be paid for a breach of the agreement. There is no allegation that plaintiff was damaged or to what extent it was damaged by the refusal of defendant, on or about January 5, 1933, to continued further with the contract. The declaration merely states in substance that the defendant refused to continue with the contract on or about January 5, 1933; that plaintiff had prepared all of the work necessary to fulfill the contract; that defendant defaulted in the pay-

ments due; and therefore by virtue of these defaults the contractual provision for terminating the contract and suing for the balance due as liquidated damages is invoked. The declaration assumed that the amount of the contract proved was binding as liquidated damages and not a penalty.

The fifth plea in the second amended set of pleas, which was held faulty on demurrer, attempted to set up in defense of the action that all of the materials contracted for were not furnished defendant by plaintiff; and that part of those furnished were returned by defendant, after notifying plaintiff that it did not wish to continue with the contract. The fourth plea of the third amended set of pleas, which was likewise held faulty on demurrer, denied that plaintiff had prepared and done all of the work necessary to be done in order to fulfill the contract. The two pleas tendered issues as to the amount of damages recoverable by plaintiff for defendant's alleged failure to continue with the contract on or about January 5, 1933; and it was error to eliminate those pleas on demurrer.

The proposed. fourth amended plea, which the court would not allow to be filed, contained a detailed account of the matter that had been set up in former pleas, which had previously been rejected upon demurrer. This plea contained matters of defense which, if the parties had gone to trial on it and if proven, might have diminished the damages. Whenever, in a case, as here, all previous pleas have been excluded on demurrer or on motion to strike, the court should permit a meritorious plea to be filed, if, under the circumstances, due diligence has been observed by the defendant, and the plaintiff is not thereby prejudiced. The considerations of justice and of a fair defense, under the circumstances here outweigh those of bringing to an end

the filing of pleadings, and the court erred in refusing to allow the proposed plea to be filed.

As a general rule, parties to a contract may stipulate in advance the amount to be paid as compensation in the event of a breach of the agreement. 8 R. C. L. 559, Sec. 110, and cases cited. But where the agreement is to pay the same large sum for a partial as for a complete breach of the contract, the sum will be regarded as a penalty. Greenblatt v. McCall, 67 Fla. 165, 64 So. 748. Where the sum agreed on as "liquidated damages" for any breach of a contract to pay money may easily be excessive with reference to the contract, it may be held a "penalty." Greenblatt v. McCall, 67 Fla. 165, 64 So. 748. The contract in this case provided for damages in this language:

"In the event the undersigned shall default in the payment of any of the installments of the purchase price to be paid by the undersigned as hereinabove provided as and when the same shall become due and payable, or in the event the undersigned shall default in the performance of any of the terms of this agreement, then you shall have the right, at your option, to declare all of the remaining installments of the purchase price immediately due and payable without notice to the undersigned, and said purchase price or the balance thereof so remaining unpaid shall be immediately payable to you from the undersigned, or, in the event of such default, you shall have the right, without notice to the undersigned, to declare the entire agreement terminated, and the balance of the purchase price remaining unpaid shall be due and payable from the undersigned to you, forthwith, as liquidated damages;"

This was followed by an agreement waiving service of proceeds, confessing judgment for the balance of the purchase price due hereunder together with costs and attorneys'

fees, waiving any errors that might take place at the trial and consenting to immediate execution on said judgment. In stipulating that the damages for breach of the contract shall be the balance of the unpaid purchase price; and that plaintiff, upon such breach, may regard the contract as terminated and sue for the balance of the unpaid purchase price, which is all that could have been recovered if the entire contract had been performed, the amount stipulated as "liquidated damages" is easily excessive with reference to the contract, and should be regarded as a "penalty," especially since the actual damages are readily ascertainable. See 17 C. J. 952, Sec. 247; 8 R. C. L. 566, Sec. 115, and cases cited; Chicago House-Wrecking Co. v. United States, 106 Fed. 385, 45 C. C. A. 343, 53 L. R .A. 122; Scofield v. Tompkins, 95 Ill. 190, 35 Am. Rep. 160; Webster v. Bosanquet (1912), A. C. (Eng.) 394, Ann. Cas. 1912C 1019 and note; 13 L. R. A. 672 note.

Whenever, as here, one of the parties to a contract, while the contract is still executory, directs the other party not to proceed further with the performance thereof, the former has breached the contract and the latter may bring an action for damages for the breach of the contract, or an action upon the *quantum meruit* for the value of the services rendered and materials furnished. See Worthington v. McGarry, 149 Ala. 251, 42 So. 988; Wigent v. Marrs, 130 Mich 609, 90 N. W. 423; Gibbons v. Bente, 51 Minn. 499, 53 N. W. 756; Heiser v. Mears, 120 N. C. 443, 27 S. E. 117; Cox v. Grose, 97 Fla. 848, 122 So. 513. And in such cases action cannot be maintained to recover the contract price, but may be maintained to recover the damages for the breach of the contract. See Ward v. American Health Food Co., 119 Wis. 12, 96 N. W. 388.

The declaration does not specifically allege any damage

resulting to plaintiff from the alleged acts of defendant, although it lays a predicate for such allegations. Since the sum mentioned in the contract to be paid upon a breach thereof is construed to be a penalty, plaintiff must sue for the damages actually resulting from the breach thereof and not for "liquidated damages"; and plaintiff must allege and prove not only the breach of the contract, but also such other essential matters of fact as are necessary to show that plaintiff has sustained actual damage by such breach. Smith v. Newell, 37 Fla. 147, 20 So. 249; Arnold v. First Savings & Trust Co., 104 Fla. 545, 140 So. 660; Greenblatt v. McCall, 67 Fla. 165, 64 So. 748; Tibbett's Corner, Inc., v. Arnold, 108 Fla. 239, 146 So. 218; see also Bucki v. Seitz, 39 Fla. 35, 21 So. 567; Restatement of the Law of Contracts—American Law Institute, Sections 327-346.

Where a party, as defendant here, is under contract to accept and pay for certain services and materials to be furnished in installments by the other party, the plaintiff, after accepting part of the services and materials, breaches the contract by refusing to accept any further performance of services or delivery of materials, and refused to make the installment payments when due, that party, the defendant, is liable in damages to the other party, the plaintiff; and the damages recoverable are such damages as would naturally result from the breach of the contract, whether as the ordinary consequence of such a breach, or as a consequence which may, under the circumstances, be presumed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it. Hadley v. Baxendale, 9 Exch. 341, 23 L. J. Exch. 179, 18 Jur. 358, 5 Eng. Rul. Cas. 502; see also Brock v. Gale, 14 Fla. 523, 14 Am. Rep. 356; Moses v. Autuono, 56 Fla. 499, 47 So. 925, 20 L. R. A. (N. S.) 350;

Williams v. Atlantic Coast Line R. Co., 56 Fla. 735, 48 So. 209, 131 A. S. R. 169, 24 L. R. A. (N. S.) 134. This would include the reasonable and necessary expenses incurred, in good faith, by the plaintiff in partial performance of the contract, 8 R. C. L. 495, Sec. 56, and cases there cited, together with the profits that would have been realized, if full performance had been permitted, as the direct and immediate fruits of the contract, as distinguished from remote and speculative profits. Taylor Manufacturing Co. v. Hatcher Manufacturing Co., 39 Fed. 440, 3 L. R. A. 587.

The Court, in rendering final judgment in favor of plaintiff, after sustaining demurrer and motion to strike as to defendant's third amended pleas, awarded plaintiff, as damages, the full amount of $1900.00 agreed to be paid on full performance of the contract, less a credit of $384.00, allowed to defendant. As the judgment was rendered upon an erroneous theory for the recovery of damages and as the pleas referred to were excluded, the judgment on the pleadings may be in excess of the actual damages sustained by plaintiff, so the judgment is reversed and the cause is remanded for appropriate proceedings.

It is so ordered.

WHITFIELD, C. J., and ELLIS, TERRELL, BUFORD, and DAVIS, J. J., concur.

BROWN, J., concurs in the conclusion.